# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**ELIZABETH L. PERRIS**  
CHIEF BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700  
PORTLAND, OREGON 97204  
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK  
MARGOT LUTZENHISER, LAW CLERK

**VIA ELECTRONIC MAIL**

June 5, 2008

Matthew A. Goldberg  
K&L Gates LLP  
222 SW Columbia St. Suite 1400  
Portland, OR  97201-6632

Barton C. Bobbitt  
Ambrose Law Group LLC  
322 SW Sixth Ave. Suite 100  
Portland, OR  97209-3611

Steven C. Johnson  
21825 SE Stark St. Suite C  
P.O. Box 1003  
Gresham, OR  97030

>      Re:   <u>Renn v. F.W. Financial Services, Inc.</u>, Adv. No. 05-3115  
>            Ruling on Trial

Dear Counsel:

     The purpose of this letter is to give you my ruling on the trial in this adversary proceeding, which was held on May 30, 2008.  As explained below, I rule in favor of the trustee.

     The trustee seeks to avoid under 11 U.S.C. § 548(a)(1)(B) the transfer of the assets of debtor Dryer and Sons Electric Company (debtor) to F.W. Financial Services, Inc. (FW) and to recover the value of the assets from the subsequent transferee, RGVB Enterprises LLC (RGVB), pursuant to 11 U.S.C. § 550(a).  FW and RGVB will be referred to collectively as defendants.

     The trustee may avoid the transfer of property if he shows that (1) debtor had an interest in property; (2) there was a transfer of that interest in property within one year of the filing of the bankruptcy petition; (3) debtor was insolvent at the time of the transfer or became insolvent as a result of it; and (4) debtor received less than reasonably equivalent value in exchange for the transfer.  11 U.S.C. § 548(a)(1)(B).

There is no dispute that, within one year before bankruptcy, debtor transferred its interest in all of its business assets to FW in satisfaction of the secured debt held by FW, pursuant to a Collateral Disposition and Forbearance Agreement (CDFA). The amount of the debt satisfied by the transfer was $130,130. Among the assets transferred were accounts receivable and two vehicles. There is also no dispute that debtor was insolvent at the time of the transfer. Within one week after the transfer to FW, FW in turn sold the business assets to RGVB for the amount of the satisfied debt, $130,130. RGVB took over the business and proceeded to collect the accounts receivable.

Thus, the only disputed issue with regard to the elements of the fraudulent transfer claim is whether debtor received reasonably equivalent value for its transfer of all of its assets to FW in satisfaction of its debt.

In considering reasonably equivalent value, the court determines the value of what was transferred, in this case all of the business assets, and compares it to what was received, in this case the forgiveness of debtor's then-outstanding $130,130 debt. The value of the property transferred is determined as of the date of the transfer. 5 Collier on Bankruptcy ¶ 548.05[1][b] at 548-38 (15th ed. Rev. 1998). Thus, the question is whether the $130,130 debt forgiveness received for the assets transferred is reasonably equivalent to the value of those transferred assets.

As an initial matter, I need to rule on the trustee's objection to David Eastman's deposition testimony. Eastman's perpetuation deposition, taken the day before trial on very short notice, was offered as expert testimony at trial. Eastman was not disclosed as a potential witness on defendants' witness list as required by Fed. R. Civ. P. 26(a)(3), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7026, and the trustee was not aware that his testimony was going to be offered until defendants sought to perpetuate his testimony shortly before trial. Rule 26(a)(3) requires disclosure of the names of each witness a party intends to call at trial. Defendants argue that Eastman did not have to be listed on the witness list, because he was disclosed earlier in the case as a potential expert witness, pursuant to Fed. R. Civ. P. 26(a)(2).

Rule 26(a)(3) requires disclosure of witnesses "[i]n addition to the disclosures required by Rule 26(a)(1) and (2)[.]"

A party failing to identify witnesses as required by Rule 26(a) is not allowed to use the witnesses at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). There was no justification for failing to disclose Eastman as a potential witness, and the failure to disclose was not harmless, in that it deprived the trustee of the opportunity to prepare to cross examine Eastman. I sustain the trustee's objection to Eastman's deposition testimony.

The admitted evidence shows that the business assets transferred pursuant to the CDFA were to include vehicles, equipment, inventory, tools, accounts receivables, and general intangibles such as customer lists and goodwill. The parties do not disagree that, at the time of the transfer to FW, there was very little inventory (Vicky Bacon testified that it was worth approximately $5,000), and the equipment and tools were gone. Bacon testified that the vehicles were also gone, except for the two vehicles the parties value at $12,000.

The trustee argues that the value of assets transferred should be determined by the value of what was ultimately collected from the accounts receivable that were transferred, less expenses connected with those collections. The trustee relies on the report prepared by Carl Foster, the jointly chosen CPA, who determined that the amount received from the accounts receivable that were transferred, less expenses related to those collections, was $303,330.

FW argued at trial that Foster disallowed $12,000 of expenses because they were incurred after the date of the transfer, November 14, 2002, but included the entire $56,000 of profits that were the result of work beyond November 14. It argued that the treatment of profits and expenses should be consistent, so the $56,000 profits attributable to post-November 14 work should be deducted from the calculation of receipts.

There was no testimony about this adjustment to the expenses, only argument. Foster's report shows that defendants sought to reduce the amount of collected amounts by $37,448.50, which they labeled "Less: 'Cannot Post Amount' Expenses Assigned by FW to the A/R." Exh. 23. The trustee sought to adjust that amount by $13,073.58, with the explanation "Adjustment is for expenses New DE paid on jobs for which there was no outstanding A/R on 11/14/02. Those expenses cannot be matched against receivables as of 11/14/02 and hence are irrelevant to their

value." Foster accepted the trustee's argument, and noted on his supporting documentation that the amounts were: "Not included in Accounts Receivable (A/R) Schedule L - Expenses paid of $10,426.25 not associated with collection of A/R." There was a similar notation for the second amount of $2,647.33. The supporting documentation does not refer these expenses to any account receivable.

As for the $56,042.04 in profits, defendants included those profits in their calculation, with the notation: "Add: Profit New DE made on jobs it completed to collect receivables." The trustee did not seek any adjustment to that amount. Therefore, Foster accepted that amount and included it in his calculations. There is no supporting documentation noted, so I cannot tell whether in fact that profit was related to November 14, 2002, receivables. Nor is there any indication that FW made this argument about the profits to Foster. There is no evidentiary basis for backing out of Foster's calculation the amount of profits included by FW in its calculation. Therefore, I accept Foster's calculation that net collections on the transferred receivables totaled $303,330.

Defendants argue that the amount realized from collection of the accounts receivable is not evidence of the value of the accounts receivable as of the transfer date.

The value of receivables transferred is affected by the circumstances existing at the time of the transfer. In this case, debtor was insolvent and having difficulty staying in business at the time of the transfer. It was not able to pay its debt to FW, and would have had trouble completing jobs in progress, the completion of which was necessary to allow recovery of the existing accounts receivable.

Although I agree that the amount collected is not dispositive of the value of the accounts receivable at the time of the transfer, the net amount does provide some evidence that the receivables had value as of the transfer date. There is no doubt that the value of the receivables was much less than their book value of $1.118 million.

If Foster's report were the only evidence of the value of the assets transferred to FW, I might conclude that the trustee had failed to meet his burden of proving that the $130,130 debt

forgiveness was not reasonably equivalent to the value of the assets transferred.

There is, however, other evidence of the value of what was transferred.

Bacon, who with her partner purchased the assets from FW a week after debtor had transferred them to FW (and then formed RGVB), testified that she had made an offer of $175,000 to purchase the business assets in April of 2002, seven months before the transfer at issue in this case. At that time, she wanted to purchase the vehicles, equipment, inventory, fixtures, office equipment, customer list, and work in progress. She did not want to purchase the accounts receivable, which at that time had a book value of $2.1 million, and she was not willing to pay anything for the company's name or goodwill.

Later that year, when FW foreclosed its security interest in debtor's assets and offered to sell the assets to Bacon, she took the accounts receivable because they were part of the package of assets. She paid $130,130 for the assets because that was the amount that debtor had owed FW. By this time, the book value of the accounts receivable was $1.118 million. But Bacon testified that she was not concerned about obtaining the accounts receivable as part of the business purchase. She was mainly interested in purchasing the same business assets she had considered valuable in April, primarily the customer lists and work in progress, vehicles, equipment, and inventory, and the employees who would come with the business. She considered the accounts receivable valuable not for collection purposes, but instead for the customer contacts they would give the new business. As it turned out, the accounts receivable provided a cash flow of $200,000 in the first two months, but she had not placed any value on them at the time of the purchase.

I conclude that the amounts collected from the receivables, the timing of the collections, and Bacon's testimony establishe that the transfer of debtor's assets to FW for $130,130 was for less than reasonably equivalent value. She did not attribute any value to the accounts receivable, but instead was willing to pay $130,000 for the business assets other than the accounts receivable. Although the parties focus on the transfer of the accounts receivable and the two vehicles, Bacon testified that she was acquiring something valuable besides those assets; she was acquiring the customer lists, the work in progress, some

Matthew A. Goldberg
Barton C. Bobbitt
Steven C. Johnson
June 5, 2008
Page 6

office equipment, and employees to continue the work. Those assets had enough value to her that she was willing to pay $175,000 in April and then $130,130 in November to acquire them, whether or not the accounts receivable were part of the package.

Thus, the evidence establishes that the business assets, apart from the accounts receivable, had value supporting a purchase price of $130,130. The accounts receivable, however, also certainly had a value, which is clear from the fact that RGVB was able to collect $200,000 on those accounts within two months after the transfer, and ultimately collected more than $300,000 net on those accounts. Even discounting the value of the accounts for risk and the time value of money, the accounts receivable added significant value to the other assets transferred.

Because Bacon's testimony establishes that the business had a value of approximately $130,000 on the date of the transfer, even without the accounts receivable, and the accounts receivable provided a cash flow of $200,000 in the first two months after the transfer, it is clear that the $130,000 paid was less than reasonably equivalent value for all of the assets of the business, including the accounts receivable.

At trial, Bacon moved to amend her answer to raise two defenses: that she was a good faith purchaser for value and therefore the trustee may not recover from her under 11 U.S.C. § 550(b), and that she has a lien on the property to secure improvements made after the transfer, pursuant to 11 U.S.C. § 550(e). I denied the motion to amend with regard to the § 550(b) defense, but allowed the amendment to add the § 550(e) defense, because Bacon argued that the proof to support that defense was in the exhibits already admitted. I limited consideration of the § 550(e) defense to those admitted exhibits.

Having considered the defense and the exhibits admitted in this case, I conclude that the § 550(e) defense fails. That defense protects only a good faith transferee. The testimony and exhibits presented do not establish that Bacon was a good faith purchaser; there is no question that she knew that the assets had been transferred in satisfaction of debtor's debts, and that the price she paid was based solely on what the forgiven debt was, not on any actual assessment of value. In addition, the evidence does not establish that she made improvements to the property

Matthew A. Goldberg
Barton C. Bobbitt
Steven C. Johnson
June 5, 2008
Page 7

after the transfer or, if she did, the cost of those improvements.

Because the trustee can avoid the transfer of debtor's assets to FW, he may recover the value of the assets. He seeks recovery of $173,200 for the receivables, which is calculated by taking the net collected on the accounts receivable with credit for what RGVB paid for the business assets. I will award the trustee a judgment for that amount. I will not award any more than that, because the trustee did not seek more, because the trustee never attributed any value to the business assets other than the accounts receivable and the vehicles, and because the exact value of the accounts receivable as of the date of the transfer is not, as I have said above, the same as the amount ultimately collected. Therefore, the trustee will receive judgment for the net amounts collected on the receivables less the amount paid.

The trustee also seeks to recover $12,000, which is the value of two vehicles that were transferred along with the other business assets. Defendants argue that they have already settled with the co-plaintiff Wachovia Small Business Capital, paying $15,000 to Wachovia, which included the value of the vehicles to which Wachovia made a claim. The trustee argues that, regardless of any settlement with Wachovia, the vehicles were not encumbered by a perfected security interest when they were transferred to FW, and so the trustee should be able to recover their value.

The trustee and Wachovia were joint plaintiffs in this case, making claims against some of the same property, including the vehicles. Although it is not certain what assets were the subject of the settlement with Wachovia, it is certain that the vehicles Wachovia sought were the same as those sought by the trustee. It is also undisputed that counsel for the trustee attended the settlement conference at which the Wachovia settlement was reached. In light of the failure of the trustee to raise any objection to the Wachovia settlement, he should not now be able to recover from defendants for the same property for which defendants have already paid Wachovia. I will not include the $12,000 value of the vehicles in the amount the trustee is entitled to recover.

Matthew A. Goldberg
Barton C. Bobbitt
Steven C. Johnson
June 5, 2008
Page 8

    Mr. Goldberg should submit the judgment avoiding the transfer and awarding a judgment of $173,200.

                                 Very truly yours,

                                 ELIZABETH L. PERRIS
                                 Bankruptcy Judge